IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Samuel Emmanuel Stokes, Petitioner, | ) | C/A No. 0:15-872-JFA-PJG |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| Warden of Lieber Correctional Institution, Respondent. | ) | |

Petitioner Samuel Emmanuel Stokes, a state prisoner, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Stokes is now represented by counsel. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the parties' cross motions for summary judgment. (ECF Nos. 26 & 32.) Stokes filed a response in opposition to the respondent's motion. (ECF No. 31.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted, and Stokes's motion for summary judgment and Petition should be denied.

## BACKGROUND

Stokes was indicted in January 2005 in Spartanburg County for murder, assault with intent to kill, and first-degree burglary (2005-GS-42-0149, -1635, -1636). Stokes was represented by Clay T. Allen, Esquire, and on August 28-30, 2006 was tried before a jury and found guilty as charged. The circuit court sentenced Stokes to life imprisonment for murder, life imprisonment for first-degree burglary, and ten years' imprisonment for assault with intent to kill. (App. at 900, ECF No. 27-20 at 41.)

PJG

On appeal, the South Carolina Supreme Court affirmed his conviction and sentence. State v. Stokes, 673 S.E.2d 434, 435-37 (S.C. 2009); (ECF No. 27-3). Stokes then filed an application for post-conviction relief ("PCR"), which was denied by the state circuit court. Stokes petitioned for a writ of certiorari, which was denied by the South Carolina Court of Appeals. This action followed.

**FEDERAL HABEAS ISSUES**

Having exhausted his state remedies, Stokes, through counsel, asserts the following issues in his memorandum in support of his petition for a writ of habeas corpus:[1]

1. The Petitioner is entitled to relief where the trial attorney was ineffective for failing to offer evidence or argue that Brown was unavailable under the meaning of Sixth Amendment?

2. The Petitioner is entitled to relief where the state courts misapplied the holding of Crawford v. Washington, 541 U.S. 36 (2004), both in its admission of the statement at trial and in the denial of post conviction relief.

(Petr.'s Mem. Supp. Pet., ECF No. 17.)

---

[1] Stokes was not represented when he filed his initial Petition, which presented the following claims: (1) Stokes's right to confrontation was violated when the trial court allowed a written statement pursuant to Rule 613(b); (2) the trial court erred when evidence regarding a subsequent shooting was admitted under Rule 404(b); and (3) counsel was ineffective in that he failed to investigate the facts and circumstances of Stokes's case. (Pet., ECF No. 1.) Stokes appears, however, to have abandoned claims two and three as Stokes's counsel did not mention these claims at the time he presented his "Memorandum of Petitioner" (see Petr.'s Mem. Supp. Pet., ECF No. 17), nor did he address these claims in his memorandum in response to the respondent's motion for summary judgement (see Petr.'s Mem. Opp'n Mot. Summ. J., ECF No. 31). Accordingly, the court considers claims two and three presented in Stokes's *pro se* Petition to be abandoned. Moreover, Stokes would not be entitled to relief on these claims for the reasons stated in the respondent's memorandum in support of his motion for summary judgment. (See Respt.'s Mem. Supp. Summ. J., ECF No. 27 at 41-45.)



## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the



court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 582 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134



S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

**C.    Summary Judgment Motion**

Stokes asserts he is entitled to relief (1) where his trial attorney was ineffective for failing to offer evidence or argue that Stokes's uncle, Kenneth Brown, was unavailable under the meaning of the Sixth Amendment; and (2) where the state courts misapplied the holding of Crawford v.



Washington, 541 U.S. 36 (2004), both in its admission of the statement at trial and in the denial of post-conviction relief. (Petr.'s Mem. Supp. Pet., ECF No. 17 at 4.) The respondent contends that neither claim warrants habeas relief because the South Carolina Supreme Court reasonably applied Crawford v. Washington, 541 U.S. 36 (2004), in Stokes's direct appeal, and the PCR court reasonably applied Crawford and Strickland in denying Stokes's claims. (Respt.'s Mem. Supp. Summ. J., ECF No. 27.) After a careful review of the parties' arguments and the entire record, for the reasons discussed below, the court agrees that Stokes is not entitled to habeas relief on his claims.

**1.     Relevant Background**

As summarized by the South Carolina Supreme Court, the following background is relevant to Stokes's claims:

> On the night of October 6, 2003, Spartanburg police responded to a 9-1-1 call that someone had been shot at a home on Briarcliff Road. When police arrived, they found Catrina Cohen hysterical on her front porch. In the master bedroom, the police found Nicholas Thomas with his head in the lap of his mother, Brenda Nelson. Nicholas had been shot through the head; he later died at the hospital.[]
>
> [Stokes] was tried in August 2006.[] Catrina, who was Nicholas's fiancée,[] testified that on October 6, 2003, she was at home with Nicholas, Brenda, and her three children when intruders kicked in the door. Catrina, who was in the bedroom with Nicholas at the time, heard shots being fired, then heard someone ask where the money and car keys were, and Brenda reply, "[W]e don't have anything." Nicholas reached for a gun from under the mattress, and Catrina hid in the closet. She could see people enter the room and go through shoe boxes, but she could not see their faces.[] When she came out of the closet, Nicholas was lying on the floor in a puddle of blood.
>
> The crime scene was processed that night, but police also went back to the scene on October 23, 2003. At that time, they retrieved a bullet that fell on the floor from the bedroom curtain. The bullet appeared to have blood and hair on it.
>
> On December 21, 2003, [Stokes] was apprehended in North Carolina while pumping gas into a rental car. The North Carolina narcotics agent who made the arrest found a .357 Ruger pistol under the front driver's side seat. A SLED firearms expert testified at trial that the bloody bullet found in Catrina's bedroom definitively matched the .357 pistol found with appellant.



**Prior Inconsistent Statement**

At trial, the State called [Stokes]'s uncle, Kenneth Brown. Brown acknowledged he was serving a 62-year federal sentence for armed bank robbery. The State attempted to elicit testimony from Brown regarding a statement he made to police on November 26, 2003, after police had apprehended him. Brown admitted he was taken to the hospital by police after a car chase, but he specifically denied having a conversation at the hospital with Detective John Parris.

Brown escaped from police custody while in the hospital.[] He was later captured in Florida and extradited to South Carolina. On January 2, 2004, while housed in the Lexington County jail, Brown gave Detective Parris a written statement. While on the stand, the State presented this three-page statement to Brown for his review; Brown, however, denied making this statement as well.[6]

Although defense counsel cross-examined Brown about his prior criminal record, he did not ask Brown any questions about his alleged statements to police.

The State subsequently called Detective Parris to the stand and offered Brown's written statement under Rule 613(b), SCRE, as extrinsic evidence of a prior inconsistent statement.

Appellant objected. During the discussion on appellant's objection—out of the presence of the jury—the trial court noted that Brown had been on the stand and available for cross-examination. Moreover, the trial court specifically offered defense counsel the opportunity to recall Brown for further cross-examination or as a witness in the defense case. Counsel rejected the trial court's offer, contending that this would force appellant to ask about the substance of the statement prior to the State bringing up the details of the statement. Counsel further argued that if he questioned Brown and he continued to deny making the statement, [Stokes] would be denied "effective cross-examination." When the trial court again offered to produce Brown because he was still under subpoena, counsel declined, stating that Brown was "a loose cannon," and therefore counsel had "no idea what he will say once he takes that stand."

---

[6] The written statement reflects that Brown's attorney was present and signed the statement as a witness.

The trial court allowed the statement to be admitted as evidence and published to the jury. Essentially, Brown relayed to Detective Parris that on November 26, 2003, [Stokes] told Brown that he (i.e., [Stokes]) was involved in the October 6, 2003, shooting.



The statement reads as follows, in pertinent part:

> On 11/26/03 I was at the BP station. I pick up [Stokes] and Tony, they got into the car and once they was in, [Stokes] & Tony that is Tony ask Sam you do have everything right, and [Stokes] said nigger everything is in the bookpack. Tony out the bookpack and pull out a black gun, and was playing with it, as he was checking it out. At this time [Stokes] stated yes that's that nigger shit, he almost had me, but my nigger Tony took his ass out, shot his ass right in the fucking head. At this time I am wondering what are they talking about, and [Stokes] say that dud[e] on [street], and I remember reading about it in the newspaper, and people was talking about it. At this time I said to them both I know you all didn't. At this time I just went into a panic state.
>
> I remember reading about [it] in the newspaper in Oct. 2003. On the [day] I saw them, I saw a black auto[matic] handgun and it cam[e] from the killing of the guy they killed. [Stokes] told me that the gun came from the killing of Nicklos, the nigger that they kill with the .357 gun. [Stokes] said that he almost kill him if Tony had not shot him with the .357 gun . . . .

> On cross-examination, defense counsel elicited testimony from Detective Parris which explained that while Brown was in the hospital on November 26, 2003, he volunteered information that the black gun used (by Brown) in the robbery committed that same day was taken from the Briarcliff Road residence on October 6, 2003, and that [Stokes] was the person involved in the murder there. In other words, Brown told Detective Parris that [Stokes] was responsible for the murder, and that he (i.e., Brown) was not connected to that crime.

State v. Stokes, 673 S.E.2d 434, 435-37 (S.C. 2009); (ECF No. 27-3 at 2-5).

**2. South Carolina Supreme Court's Opinion**

On direct appeal, Stokes argued that his right to confrontation was violated by the admission of Brown's prior inconsistent statement. In rejecting Stokes's Confrontation Clause claim, the South Carolina Supreme Court began with a discussion of Rule 613(b), SCRE, regarding prior inconsistent statements, noting that a prior inconsistent statement may be introduced as substantive evidence when the declarant testifies at trial and is subject to cross examination. State v. Stokes, 673 S.E.2d 434, 438 (S.C. 2009) (citing State v. Copeland, 278 S.C. 572, 300 S.E.2d 63 (1982)); (ECF No. 27-3



at 7). The South Carolina Supreme Court then quoted the Confrontation Clause from the Sixth Amendment to the United States Constitution, recognizing that it provides the right of an accused to confront and examine witnesses, ensuring a "fair trial in that it promotes reliability in criminal trials and insures that convictions will not result from testimony of individuals who cannot be challenged at trial." Id. (quoting State v. Martin, 292 S.C. 437, 439, 357 S.E.2d 21, 22 (1987)).

The Court then addressed Stokes's Confrontation Clause argument, which largely relied on two prior South Carolina Supreme Court cases, State v. Pfirman, 386 S.E.2d 461 (S.C. 1989), and Simpkins v. State, 401 S.E.2d 142 (S.C. 1991). The Court agreed with the State that those cases had been supplanted by the United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), and expressly overruled the cases upon which Stokes relied. State v. Stokes, 673 S.E.2d 434, 438-39 (S.C. 2009); (ECF No. 27-3 at 8-10). Relying on Crawford as well as several other United States Supreme Court decisions addressing the right of confrontation, the South Carolina Supreme Court concluded that because Stokes had the opportunity to cross-examine Brown at trial, no Confrontation Clause violation occurred. Id. at 439-41 (discussing Crawford, 541 U.S. at 54-59, California v. Green, 399 U.S. 149 (1970), U.S. v. Owens, 484 U.S. 554 (1988), Delaware v. Fensterer, 474 U.S. 15 (1985), Douglas v. Alabama, 380 U.S. 415 (1965), and other cases).

**3. PCR Court's Decision**

In his PCR action, Stokes asserted that trial counsel was ineffective for failing to cross-examine or recall Brown, thus violating the Confrontation Clause. (ECF No. 27-20 at 64-68.) In denying Stokes's ineffective assistance claim, the PCR court found:

> The Applicant [Stokes] also alleged that Counsel was ineffective when he failed to cross-examine Applicant's uncle ("Brown") or recall him to the stand to address Brown's statement that was entered into evidence. Counsel testified that he did what he could to prevent Brown's written statement, which accuses Applicant of being involved in the robbery and shooting and having possession of the gun, from



> coming into evidence to being with, in particular because he did not believe the State was setting out the proper foundation for the statement. Counsel testified that Brown refused to acknowledge that he had made the statement while on the stand and the State moved to introduce the written statement as extrinsic evidence of a prior inconsistent statement through the testimony of the investigator who took Brown's statement. The statement was entered into evidence over Counsel's strenuous objections; however, Counsel acknowledged that he did not cross-examine Brown as to the substance of that statement once it was entered. Counsel testified that he was concerned that any questions he asked of Brown could backfire and Brown could end up admitting the statement on cross and hurt the case. Counsel only cross-examined Brown to the extent that he asked Brown about his previous conviction for Federal armed bank robbery and his three consecutive life sentences for burglary charges, in an attempt to attack his credibility.
>
> The Court finds that the Applicant has failed to meet his burden of proof as to this claim. Although the [Supreme Court] found on appeal that the Applicant voluntarily chose not to cross-examine Brown and therefore, his confrontation rights were not violated, the Applicant failed to prove that had Counsel cross-examined Brown the outcome of Applicant's trial would have been any different. The Applicant's mere speculation as to what a witnesses' [*sic*] testimony would have been cannot, by itself, satisfy his burden of showing prejudice. Clark v. State, 315 S.C. 385, 434 S.E.2d 266 (1993); Glover v. State, 318 S.C. 496, 458 S.E.2d 538 (1995). An Applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial. Bannister v. State, 333 S.C. 298, 509 S.E.2d 807 (1998). Brown did not testify at the PCR hearing and Applicant failed to produce any evidence that would indicate that any testimony Brown would have offered would have affected Applicant's trial in any way. Therefore, this claim is denied and dismissed.

(ECF No. 27-11 at 13-14.) Stokes's Rule 59(e) motion to alter or amend (ECF No. 27-20 at 44-51) was dismissed on July 6, 2012. (ECF No. 27-11 at 18.)

**4. Discussion**

**a. Confrontation Clause**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This right to confrontation applies to state court proceedings, Pointer v. Texas, 380 U.S. 400, 403 (1965), and it "provides two types of protections for a criminal defendant: the right physically to face those who



testify against him, and the right to conduct cross-examination." Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987) (plurality opinion); see also Delaware v. Fensterer, 474 U.S. 15, 18-20 (1985). In Crawford v. Washington, 541 U.S. 36 (2004), abrogating Ohio v. Roberts, 448 U.S. 56 (1980), the United States Supreme Court held that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity for cross-examination. Crawford, 541 U.S. at 54; see also, Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009). The Confrontation Clause, however, is not violated when the out-of-court declarant testifies at trial and is available for cross-examination, Nelson v. O'Neil, 402 U.S. 622, 626-27 (1971), and is subject to full and effective cross-examination concerning the prior statements. California v. Green, 399 U.S. 149, 158 (1970). Stokes maintains that he was convicted by the testimony of a witness who was, in essence, unavailable because the witness had previously invoked the Fifth Amendment; thus, Stokes alleges he was not permitted to fully and effectively cross-examine the witness in derogation of the Confrontation Clause. (Petr.'s Mot., ECF No. 17 at 6-8.)

The parties do not dispute, and it is clear, that Brown's statement was testimonial as Crawford explicitly held that statements given to police during interrogations qualify as "testimonial" statements. Crawford, 541 U.S. at 68. Although the introduction of testimonial hearsay statements may violate the Confrontation Clause, under Crawford, there is no Confrontation Clause violation where the declarant of the out-of-court statement is available for cross-examination at trial. As the United States Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation clause problem." Green, 399 U.S. at 162; see Crawford, 541 U.S. at n.9 ("[W]e reiterate that, when the declarant

PJG

appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.") (internal citations omitted).  Simply put, "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." Green, 399 U.S. at 158.

In the present case, Brown testified at trial and was subject to cross-examination. (ECF No. 27-18 at 40-47.)  Brown testified that Stokes was his nephew, and that on November 26 of 2003, Brown was apprehended after a police chase. (Id. at 41.)  Next, the solicitor asked Brown:

> Q. . . . Do you recall, after you were apprehended and before you were, you escaped, having a conversation with Detective John Parris?
> A. No, sir.
> Q. Okay. You do -- do you deny having a conversation?
> A. I don't even know him.
> Q. Okay. Let me just ask you, do you admit or deny having a conversation?
> A. I deny having a conversation with Mr. Parris.
> Q. Okay. All right. When you were re-apprehended and brought back to Lexington County, did you, in fact, again meet with Detective Parris along with your lawyer, John Elliott, at the Lexington County Jail?
> A. Yes.
> Q. Okay. And also present was a, a deputy from the Sheriff's Office, Darren Dukes?
> A. I can't recall.
> Q. Well, do you recall that meeting?
> A. I recall that meeting, yes.
> Q. Do you remember giving a written statement at that time?
> A. No, sir, I didn't.
> Q. Okay. Do you admit or deny giving a written statement?
> A. Deny.
> Q. Okay. I'm gonna show you what's been premarked as State's Exhibit No. 14-A. . . . Ask you take a look at that document, all three pages.
> A. (Witness complies.)
> Q. Is that a statement you gave to the, the police while you were in custody in Lexington County, South Carolina on---
> A. No, sir.
> Q. --- on January 2nd 2004?



A. No, sir.
Q. You, you deny even making that statement too?
A. I deny it. The only time I ever seen this statement is when I returned back to I think April. You showed me this statement in April.
Q. Okay.
A. That's that first time I ever seen it.
Q. All right. So, you deny making it on, on the four, the 4th of January, the 2nd of January, 2004?
A. Yes, sir.
Q. Okay.
A. It's not even my handwriting --
Q. All right.
A. -- or my signature.

(Id. at 43-45.) The solicitor then moved to admit Brown's statement as a prior inconsistent statement under Rule 613(b) of the South Carolina Rules of Evidence through the testimony of Officer Parris. Subsequently, trial counsel cross-examined Brown:

Q. You're serving a federal sentence for bank robbery?
A. Yes, sir.
Q. Armed bank robbery?
A. Yes, sir.
Q. You're currently serving a sentence of 62 years and two months, correct?
A. Correct.
Q. In 19, I believe it was '83, you were convicted of burglary, correct?
A. Correct.
Q. Where you received a life sentence?
A. Correct.
Q. Also, on the same day, you were convicted of another burglary, correct?
A. Correct.
Q. Where you received a consecutive life sentence?
A. Correct.
Q. And yet another burglary, correct?
A. Correct.
Q. For which you received a third consecutive life sentence?
A. Correct.
Q. On that date, in 1983, at the same time, you were convicted of grand larceny, correct?
A. Correct.

(Id. at 45-46.)

PJG

Shortly thereafter, over trial counsel's Crawford v. Washington Confrontation Clause objection and lengthy discussion on the matter, the trial court permitted Parris to read Brown's statement into the record. (ECF No. 27-19 at 26-56.) The trial court explained to trial counsel, "I'm affording you the opportunity to cross-examine this witness. He is present. We'll be -- I'll be happy to see that he is back on the stand and give you every opportunity to cross-examine this witness if you choose to." (Id. at 41.) Although the court offered trial counsel an "opportunity to fully question" Brown, trial counsel declined to recall Brown. (Id. at 44-46.)

Notwithstanding Brown's presence and testimony at trial, Stokes asserts that Brown's non-responsive answers effectively rendered him unavailable for confrontation purposes. The court concludes that Brown has not shown any ground for habeas relief on this point, as the South Carolina Supreme Court appears to have reasonably applied applicable federal constitutional law on this issue. "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Fensterer, 474 U.S. at 20 (emphasis in original); see also Davis v. Alaska, 415 U.S. 308, 315-16 (1974) ("The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*.") (emphasis added; internal quotations omitted). The United States Supreme Court has repeatedly held:

> The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.

United States v. Owens, 484 U.S. 554, 558 (1988) (quoting Fensterer, 474 U.S. at 21-22).

PJG

Here, because Stokes was afforded an adequate opportunity to cross-examine and recall Brown, the court finds that the state court's rejection of Stokes's Confrontation Clause claim was not contrary to, nor an unreasonable application of, Supreme Court law. The court cannot find that the state court's denial of Stokes's Confrontation Clause claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103. Consequently, the respondent's motion for summary judgment should be granted on this claim.

**b. Ineffective Assistance of Counsel**

Stokes further asserts that the PCR court erred in denying post-conviction relief, and that trial counsel was ineffective for failing to establish that Brown was legally unavailable for cross-examination, even though he was physically present at trial. (Petr.'s Mem. Supp. Pet., ECF No. 17 at 13-17.)

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams, 529 U.S. at 391 (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims"). To satisfy the first prong of Strickland, a petitioner must show that counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.



The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Stokes's Petition. Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

Stokes's argument that trial counsel was ineffective for failing to establish that Brown was unavailable fails because it is clear from the record that the PCR court reasonably determined that trial counsel was not ineffective under Strickland in failing to recall Brown. (See ECF No. 27-11 at 13-14.) The Strickland standard is highly deferential to strategic choices made by trial counsel and when considering a claim of ineffective assistance of counsel based on tactical decisions "a court

PJG

must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. Thus, courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977); Stamper v. Muncie, 944 F.2d 170 (4th Cir. 1991). Further, the fact that trial counsel's strategy was unsuccessful is insufficient to demonstrate that his performance was deficient. See United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) ("Under the first prong of Strickland, we apply a 'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.' ") (quoting Strickland, 466 U.S. at 689).

In the present case, as cited above, trial counsel vigorously attempted to keep Brown's statement from being admitted at trial. (ECF No. 27-19 at 26-56.) The trial court noted the crucial difference between the circumstances of Stokes's case and the holding in Crawford; that the Crawford test applies to situations where the prosecution was unable to call the witness to the stand, and not situations, as in the instant case, where the witness was present and the parties were able to call the witness to the stand to testify. The trial court admitted Brown's statement because Brown was present, subjected to cross-examination, and available to be recalled by trial counsel. (See ECF No. 27-19 at 44-45.) At the PCR hearing, trial counsel testified that his strategy was to demonstrate reasonable doubt as to the participation of Stokes, which included impeaching the credibility of Brown. (ECF No. 17-11 at 78.) Indeed, as cited above, trial counsel cross-examined Brown. (ECF No. 27-18 at 45-46.) Trial counsel further testified at PCR that he declined the opportunity to recall and "fully question [Brown]" because Brown was a "loose cannon" and potentially could even

PJG

confirm the damaging statement if recalled. (ECF No. 27-13 at 36-37.) Specifically, trial counsel explained,

> [M]y goal was to not try to aggravate the situation any more and not try to refer to the statement any more and then when he put up the officer trying to object because he didn't lay the right foundation.
>
> . . . .
>
> I was just trying to do what little cross-examination I did, trying to show that [Brown] was not a very truthful person, you know, his prior record, his escape from custody after he gave the original statement, which I think he characterized as mistakenly released. But, nonetheless, I was trying to establish that he is a liar.

(ECF No. 27-11 at 50-53.) "While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by trial counsel after due consideration do not constitute ineffective assistance of counsel." Evans v. Cartledge, C/A No. 0:13-2637-TMC, 2015 WL 1006271, at *10 (D.S.C. Mar. 6, 2015); see Strickland, 466 U.S. at 689; see also United States v. Eisen, 974 F.2d 246, 265 (2nd Cir. 1992) (noting that decisions relating to cross-examination and impeachment "fall squarely within the ambit of trial strategy, and, if reasonably made, cannot support an ineffective assistance claim") (internal quotations and citations omitted).

Upon careful review of the record, with specific reference to the PCR court's order, the court finds the PCR court's analysis to be reasonable and concludes that Stokes cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim, which in this case included the Strickland test, or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). Therefore, Stokes cannot show "there was no reasonable basis" for the state appellate court to deny relief. Harrington, 532 U.S. at 98. As observed by the Harrington court, "[t]he pivotal question is whether the state courts application of the Strickland standard was

PJG

unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101. Thus, for all of the reasons discussed by the PCR court, the court concludes that Stokes has failed to establish that counsel's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient. Stokes's arguments fail to demonstrate that any of the PCR court's findings were unreasonable nor have they shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410. Accordingly, the respondent's motion for summary judgment should be granted on this claim.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment be granted (ECF No. 26), and Stokes's motion for summary judgment (ECF No. 32) and Petition be denied.

January 28, 2016  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).